IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

*United States v. Derneval Rodnell Dimmer*
Case No. 3:12-cr-00035-TMB-1
Case No. 3:12-cr-00056-TMB-7

By: THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS: ORDER FROM CHAMBERS

The matter comes before the Court on Defendant Derneval Rodnell Dimmer's Emergency Motions for Compassionate Release (the "Motions") filed in the consolidated cases 3:12-cr-00035-TMB-1 ("*Dimmer I*") and 3:12-cr-00056-TMB-7 ("*Dimmer II*").[1] On January 12, 2023, the Court *sua sponte* expedited consideration of the Motions.[2] On January 24, 2023, Dimmer submitted his Amended Motion for Compassionate Release and sealed Bureau of Prisons ("BOP") medical records,[3] and the Court ordered the United States (the "Government") and U.S. Probation & Pretrial Services ("USPO") to respond by January 27, 2023.[4] The Government opposes the Motions, while USPO supports the Motions.[5] For the reasons discussed below, the Motions are **GRANTED**.

### A. Background

On January 14, 2013, Dimmer pleaded guilty to Conspiracy to Distribute Controlled Substances (*Dimmer II*) and Drug Trafficking Conspiracy (*Dimmer I*).[6] The Court sentenced Dimmer to two concurrent 228-month terms of imprisonment followed by ten years of supervised release.[7] Dimmer is currently detained at the Federal Correctional Institution in Florence, Colorado ("FCI Florence") and has a release date of October 13, 2028.[8]

After reviewing the parties' briefing on the matter, the Court scheduled a motion hearing for February 2, 2023.[9] Prior to the hearing, the Court directed Dimmer to "submit information under seal from [Dimmer's proposed private medical provider] detailing their review of [his] Bureau of Prisons medical records and proposed plan for treatment, as well as the private medical provider's own proposed plan of treatment."[10] The Court also directed the following persons to appear at the

---

[1] *Dimmer I*, Dkt. 330 (Motion); *Dimmer II*, Dkt. 821 (Motion). Unless otherwise specified, the citations below refer to docket numbers in *Dimmer II*.
[2] Dkt. 822 (Text Order).
[3] Dkt. 826 (Amended Motion); Dkt. 827 (Sealed Exhibit – BOP Medical Records).
[4] Dkt. 828 (Text Order Setting Expedited Response).
[5] Dkt. 831 (Sealed USPO Memo); Dkt. 832 (Government Opposition).
[6] *See* 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); Dkt. 322 (Plea Agreement); Dkt. 323 (Minute Entry); 368 (Amended Minute Entry); Dkt. 370 (Judgment).
[7] Dkt. 184 (*Dimmer I*); Dkt. 370 (*Dimmer II*).
[8] Dkt. 831 at 2.
[9] Dkt. 835 (Sealed Order); Dkt. 841 (Minute Entry); Dkt. 842 (Hearing Transcript Excerpts).
[10] Dkt. 835 at 1–2.

1

hearing: (1) the Bureau of Prisons medical provider most familiar with Dimmer's treatment plan and (2) the proposed private medical provider retained by Dimmer.[11]

At the hearing, Family Nurse Practitioner ("FNP") Seana Maltezo testified regarding Dimmer's medical care while in BOP custody.[12] Phillip Wise, a former Assistant Director of the BOP, also testified regarding BOP health care policy and the processes at BOP facilities.[13] The parties later filed the supplemental briefing that the Court requested at the hearing.[14]

### B. *Motion for Compassionate Release*

In the Motions, Dimmer seeks compassionate release based on his diagnosis of stage 3 colon cancer.[15] Dimmer cites two bases for his proposed sentence reduction. First, Dimmer argues that while undergoing surgery and chemotherapy he will be "at an elevated risk . . . if he remains incarcerated in a prison setting where viral diseases are more prevalent than the community at large and where social distancing is impossible."[16]

Second, Dimmer contends that BOP has an "underwhelming track record providing necessary healthcare to federal inmates with life-threatening conditions."[17] In support of this, Dimmer submits a declaration from Wise, "who was responsible for health care for the agency."[18] Dimmer specifies that, "while the BOP seeks to provide medically necessary care for its inmates, it may decline to provide all medically appropriate care."[19] Furthermore, according to Dimmer, "pain-management [during chemotherapy] is difficult to accomplish" in Level III medical facilities.[20] Dimmer also cites other cases in which "patients with cancer [] have been denied life-saving treatment" by BOP.[21]

---

[11] *Id.* at 2.
[12] *See* Dkt. 841; Dkt. 842.
[13] *See* Dkt. 841; Dkt. 842; *see also* Dkt. 840-1 (Wise Declaration).
[14] *See* Dkt. 841; Dkt. 843 (Dimmer Supplement); Dkt. 844 (Government Supplement).
[15] Dkt. 826; Dkt. 827-1 at 155–56 (Sealed Medical Records).
[16] Dkt. 826 at 6 (citing Stuart A. Kinner et al., *Prisons & custodial settings are part of a comprehensive response to COVID-19*, THE LANCET (March 17, 2020), https://www.thelancet.com/journals/lanpub/article/PIIS2468-2667(20)30058-X/fulltext ("Prisons are epicentres for infectious diseases . . . because of the higher background prevalence of infection, the higher levels of risk factors for infection, the unavoidable close contact in often overcrowded, poorly ventilated, and unsanitary facilities, and the poor access to health-care services relative to that in community settings.")).
[17] *Id.*
[18] *Id.*; Dkt. 826-4 (Wise Declaration in Case 3:18-cr-00018-SLG-MMS); Dkt. 840-1.
[19] Dkt. 826 at 8.
[20] *Id.*
[21] *Id.* at 9 (citing C.J. Ciaramella, *Judge Holds Federal Bureau of Prisons in Contempt for Allowing Man to Waste Away From Untreated Cancer*, REASON MAGAZINE (Oct. 10, 2022), https://reason.com/2022/10/10/judge-holds-federal-bureau-of-prisons-in-contempt-for-allowing-man-to-waste-away-from-untreated-cancer/ (reporting on)).

Dimmer asserts that he has a comprehensive release plan, has procured private insurance,[22] and "expects to receive oncology treatment through Swedish Hospital in Seattle, near his brother's residence."[23] This residence "has already been inspected by [USPO]."[24] In anticipation of the motion hearing, Dimmer further clarified that although he "has a primary care physician, he does not [yet] have access to a medical provider who is familiar with [his] current medical condition."[25]

Dimmer contends that a sentence reduction "would not conflict with the Section 3553(a) factors" for three reasons. First, he "has served a substantial portion of his sentence – approximately 128 months (10 years, 8 months), the equivalent of a 150-month sentence factoring in good-time credit."[26] Second, he is "45 years old and has been a problem free inmate with only a handful of minor disciplinary violations" and has completed "a number of vocational, educational, and rehabilitative programs."[27] Third, "[a]lthough [Dimmer's] conduct was serious, the term of incarceration he has already served is more than sufficient to afford effective deterrence and promote respect for the law while ensuring just punishment for the offense."[28]

In addition to the Motions, Dimmer submits his BOP medical records under seal.[29] Those records establish his diagnosis of stage 3 colon cancer and Dimmer's need for urgent treatment.[30]

The Government opposes the Motion.[31] The Government states that there are three reasons why Dimmer fails to demonstrate "extraordinary and compelling" reasons to warrant a sentence reduction. First, the Government asserts that BOP "is aware of [Dimmer's] condition and is actively attempting to provide him with appropriate treatment" and that even if BOP's track record is "underwhelming . . . as a general matter, . . . there is no basis to think that Dimmer himself is not receiving an appropriate course of treatment."[32]

Second, the Government contends that Dimmer "has not explained why the BOP-provided surgery would have been inadequate, or why seeking treatment at his preferred treatment provider in Washington would offer a better prognosis."[33] The Government asserts that "to the extent that Dimmer's current institution was truly unable to provide him with adequate care, he had the option to request a redesignation and transfer to a different facility—a process he expressly declined to use."[34]

---

[22] Dkt. 838-4 (Proof of Private Insurance).
[23] Dkt. 826 at 2–3, 9–10.
[24] Dkt. 831 at 3.
[25] Dkt. 838 at 1 (Notice to the Court).
[26] *Id.* at 3.
[27] *Id.*; Dkt. 831 at 2.
[28] Dkt. 826 at 3; Dkt. 826-2 (BOP Records); Dkt. 826-3 (BOP Discipline Records).
[29] Dkt. 827-1.
[30] *See generally id.*
[31] Dkt. 832.
[32] *Id.* at 2–3.
[33] *Id.* at 3.
[34] *Id.*

3

Third, the Government argues that the Court should not consider COVID-19 as a factor in this analysis because there is only one recorded inmate at FCI Florence with COVID-19 and Dimmer refused to take the COVID-19 vaccine.[35]

Finally, the Government contends that the 18 U.S.C. § 3553(a) factors "counsel against release" because Dimmer was "convicted of leading two large-scale narcotics conspiracies," charges which represent "a long career of criminal conduct."[36] Moreover, the Government claims that Dimmer "has not shown that he will not unduly endanger the public if released."[37]

USPO does not oppose the Motions, recognizing that Dimmer's medical records "indicate that [Dimmer] is [in] need [of] emergen[cy] colorectal surgery, chemotherapy, and continued lab testing."[38] USPO further states that a "sentence reduction would meet the criteria set forth in 18 U.S.C. § 3553(a)."[39] USPO confirms that Dimmer's "family has reported that they are willing to assist the defendant in receiving treatment and the proposed residence is appropriate."[40] If released, Dimmer's brother will house him in Puyallup, Washington; USPO has virtually inspected the home and noted there are no issues associated with this release plan.[41]

USPO notes that while Dimmer has had four minor disciplinary incidents in BOP custody, he has completed 45 educational classes and other drug treatment programs.[42] USPO also suggests that "[w]hile [Dimmer's] criminal history and conduct in the underlying offense made him a danger to the community, his engagement in programming and substance abuse treatment may reduce his risk."[43]

In his supplemental briefing, Dimmer asserts that BOP "failed to diagnose and treat [Dimmer's] cancer, resulting in deterioration of [his] health that now requires medical intervention."[44] Dimmer attributes this delay to the serious staffing shortages at FCI Florence, asserting that Dimmer's case is "yet another horrifying example of how inmates pay the price for BOP's management

---

[35] *Id.* at 3–4; Dkt. 837 (Sealed Medical Records).
[36] Dkt. 832 at 5.
[37] *Id.*
[38] Dkt. 831 at 4.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 3.
[42] *Id.* at 2.
[43] *Id.* at 3.
[44] Dkt. 843 at 1–2.

4

failures."[45] Dimmer also reiterates that the § 3553(a) factors weigh in favor of early release because of Dimmer's debilitated condition and the strong family support detailed in his release plan.[46]

In its supplemental briefing, the Government states that it "continues to oppose" Dimmer's request for compassionate release.[47] In support of its position, the Government argues that BOP is "diligently pursuing its obligation to provide [Dimmer] with the urgent treatment his condition requires" and alleges that "since his diagnosis, any delays or complications in treatment have been entirely self-inflicted."[48] Finally, the Government suggests that although a sentence reduction is not appropriate at this juncture, Dimmer may file another motion for compassionate release in the future.[49]

### C. Legal Standard

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to move the district court for a sentence reduction after exhausting their administrative remedies.[50] After considering the applicable factors set forth in § 3553(a), a court may grant the motion if it finds "extraordinary and compelling reasons warrant such a reduction[.]"[51] A court may look to the policy statement of the Sentencing Commission, which provides that "extraordinary and compelling reasons" may exist where a "defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required."[52] The Sentencing Guidelines note that examples

---

[45] *Id.* at 3–4 (citing *AFGE Urges Action on Lawmakers' Call to Address Dangerous Staffing Shortages at FCC Florence*, American Federation of Government Employees (Dec. 9, 2021), https://www.afge.org/publication/afge-urges-action-on-lawmakers-call-to-address-dangerous-staffing-shortages-at-fcc-florence/); *id.* (citing *Hickenlooper, Bennet Urge Biden Administration to Increase Pay and Address Unsustainable Working Conditions at FCC Florence*, Office of Sen. Hickenlooper (Dec. 6, 2022), https://www.hickenlooper.senate.gov/press_releases/hickenlooper-bennet-urge-biden-administration-to-increase-pay-and-address-unsustainable-working-conditions-at-fcc-florence/).
[46] *Id.* at 6–8.
[47] Dkt. 844 at 1.
[48] *Id.* at 1–2.
[49] *Id.* at 2.
[50] *See* Pub. L. 115-391, 132 Stat. 5194, 5239 (2018).
[51] 18 U.S.C. § 3582(c)(1)(A).
[52] 18 U.S.C. § 3582(c)(1); U.S.S.G. § 1B1.13. The Ninth Circuit recently held that the current version of U.S.S.G. § 1B1.13 is "not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A)." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (internal quotation marks omitted). The Ninth Circuit also concluded that a "dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i)[.]" *Id.* at 799.

5

may include "metastatic solid-tumor cancer."[53] However, the policy statement is "not binding" on courts evaluating motions filed by defendants under § 3582(c)(1)(A).[54]

### D. Discussion

As a threshold matter, the Court finds that Dimmer has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). A district court may consider a sentence reduction motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden . . . whichever is earlier [.]"[55] Dimmer has provided evidence that he submitted a compassionate relief request to the Warden at FCI Florence on December 5, 2022, at least thirty days before filing the Motions with the Court.[56] Accordingly, the Court may consider the merits of the Motion.

After review of the Motions, Dimmer's medical records, and the testimony offered at the hearing on February 2, 2023, and in recognition of the exigency of Dimmer's stage 3 cancer diagnosis, the Court concludes that Dimmer has demonstrated "extraordinary and compelling reasons" to justify his release. The Court provides three bases for this determination.

First, it appears that Dimmer is likely to suffer further delays of treatment if he remains in BOP custody. Dimmer's medical records demonstrate that Dimmer met with a BOP physician on June 3, 2022, and the physician noted that he complained of symptoms that may indicate colon cancer.[57] A month and a half later, on July 26, 2022, Dimmer received a positive result in a Fecal Occult Blood test and the medical provider wrote that Dimmer "[m]ay need [a] colonoscopy."[58] Almost five months after this initial consult and three months after this positive test, Dimmer underwent a colonoscopy on November 8, 2022.[59] Although all the parties agree that Dimmer's stage 3 colon cancer treatment is extremely time-sensitive, none are able to explain the lengthy delay in care between Dimmer's June appointment and his November colonoscopy.[60]

At the hearing, FNP Maltezo was similarly unable to explain this delay, but stated that when she began working with BOP in September 2022 only "one nurse practitioner and one physician" were there to manage "a lot of inmates."[61] The Court is troubled by a delay of approximately six months

---

[53] U.S.S.G. § 1B1.13.
[54] *Aruda*, 993 F.3d at 802 (agreeing with and adopting the rationale from *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not binding on courts considering motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A))).
[55] 18 U.S.C. § 3582(c)(1)(A)(i).
[56] Dkt. 821-1 (Letter to Warden).
[57] Dkt. 827-1 at 60, 62.
[58] *Id.* at 57–58, 76.
[59] *Id.* at 53–55.
[60] Dkt. 821; Dkt. 827; Dkt. 831; Dkt. 832.
[61] Dkt. 842 at 6. According to BOP, at least 1,130 inmates reside at FCI Florence. *FCI Florence*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/flf/ (last visited Jan. 3, 2023).

from the onset of Dimmer's symptoms to his colonoscopy and subsequent late-stage cancer diagnosis. While there was no explanation offered for the delay, what is clear from Dimmer's medical records is that his colon cancer is now classified as stage 3 and has spread to his lymph nodes.[62]

In addition to this past delay, the Court is concerned that similar delays may occur in the future. FNP Maltezo and Wise both testified that Dimmer's future cancer treatment under BOP care may take two different forms, through: (1) treatment at FCI Florence, involving outsourced care at area medical facilities, or (2) transfer to Federal Medical Center Butner ("FMC Butner") for centralized treatment.[63] FNP Maltezo clarified that a transfer to FMC Butner was "not guaranteed to happen immediately" due to multi-layered BOP procedure inherent to prisoner medical transfers.[64] Considering the unexplained delay from June to November 2022, the probability for delay in future BOP medical care, and the urgency of stage 3 colon cancer, the Court is concerned that neither FCI Florence nor FMC Butner is an adequate setting for Dimmer's treatment.

Second, the Court recognizes that congregate settings, such as correctional institutions, increase the likelihood of disease and injury for immunocompromised inmates, such as those going through chemotherapy. In her testimony, FNP Maltezo agreed that custodial settings present a higher risk of infection to chemotherapy patients when compared to patients treated in private settings.[65] Furthermore, Wise stated in his Declaration that Dimmer, whose cancer diagnosis requires chemotherapy, "will be more exposed to infections and will be more vulnerable to serious disease while his immune system is compromised," and included that "[i]t is not possible in a correctional setting to practice social distancing as recommended by CDC."[66] At the hearing, Wise reiterated these statements, asserting that protecting immunocompromised inmates from infectious diseases such as methicillin resistant staphylococcus (MSRA), influenza, and COVID-19 is "very difficult" in a correctional setting.[67] Recognizing the challenges of keeping inmates isolated from infection while undergoing chemotherapy, the Court is not convinced that Dimmer's health will be maintained at either FCI Florence or FMC Butner while Dimmer is so seriously immunocompromised.

---

[62] *See* Dkt. 827-1 at 1, 138–45.
[63] *See, e.g.*, *id.* at 2–3, 5–8.
[64] *Id.* at 2–3; Dkt. 842 at 4 (FNP Maltezo stating "[w]e don't prioritize how we make requests for [FMC] Butner. I just put in the request and it gets approved or denied based on what other people tell us. I don't know the entire process. I just know I fill out the paperwork and I get a yes or a no.").
[65] Dkt. 842 at 7.
[66] Dkt. 840-1 at 8–9.
[67] Dkt. 842 at 11–12 (Wise stating "[i]t's a very difficult one to control [MRSA] in a correctional setting. It's easily transmitted, and once there is an outbreak in a facility, it's tough to get that back under control. It can generally require a whole lot of testing and it can be deadly. People who are immunocompromised, and that includes most people on chemotherapy, are obviously more susceptible to any of those conditions.").

7

Third, the Court finds that Dimmer's proposed release plan is appropriate in light of his diagnosis. After a virtual home inspection, USPO determined that Dimmer's brother's residence was suitable and that his brother was available to help with Dimmer's long-term medical needs.[68] In addition, although Dimmer has not yet established care with a private oncologist or surgeon, he has demonstrated that he has private insurance coverage, a private primary care physician, and has identified a specific oncologist available within his insurance network.[69] USPO's support of the Motions and Dimmer's planned residence indicate that this proposed plan will provide a stable and safe environment for Dimmer's release and cancer treatment.

The Court also finds the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of compassionate release in this case. In its opposition, the Government points to the underlying facts of Dimmer's narcotics conspiracy charges, his criminal history at sentencing, and the general statistics involving recidivism of an individual with Dimmer's age and criminal history category.[70] But the Court disagrees with the Government's position that Dimmer is currently a danger to the community such that his release should be denied. Moreover, although Dimmer has received four non-violent disciplinary incidents while in BOP custody, he has also completed 45 different educational classes, ranging from behavioral and personal growth classes to courses on relapse prevention and sound engineering for beginners.[71] Dimmer also completed BOP's Drug Educational Class and non-residential drug treatment program.[72] While drug conspiracy is a serious offense, Dimmer's demonstrated commitment to personal growth and education while incarcerated, along with the time he has already served, satisfy the sentencing goals in this case.

Further, the Government relies only on Dimmer's past criminal history to argue that he cannot be safely released.[73] This argument ignores the substantial work Dimmer has done while incarcerated over the past decade to better himself and address his substance use disorder.[74] Acknowledging the seriousness of Dimmer's criminal history, the Court finds that Dimmer's demonstrated rehabilitation efforts, coupled with his urgent need for cancer treatment, outweigh any suggested risk presented by his past criminal record. In addition, Dimmer will be subject to ten years of supervised release, which mitigates the concerns that he will pose a danger to his community upon release.

---

[68] Dkt. 831 at 3.
[69] Dkt. 838-4; Dkt. 838 at 1–2.
[70] Dkt. 832 at 5–6.
[71] Dkt. 821-2 at 2–6 (BOP Education Records).
[72] *Id.* at 6.
[73] Dkt. 832 at 5–6.
[74] *See Pepper v. United States*, 562 U.S. 476, 491 (2011) "[E]vidence of post[-]sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."); *see also* Dkt. 821-2 at 2–6.

Accordingly, and for the reasons discussed above, the Motions at Docket 330 *(Dimmer I)* and Docket 821 (*Dimmer II*) are **GRANTED** with the following conditions:

1. The Court will issue an Amended Judgment. Dimmer's term of imprisonment shall be reduced to time served, and pursuant to 18 U.S.C. § 3141(b), execution of sentence shall be stayed until February 6, 2023.

2. Dimmer shall be subject to all the standard and special conditions of supervised release imposed in his original judgment.

3. Finally, BOP is encouraged to investigate the causes of the delay in this case in order to prevent similar future delays and detrimental medical outcomes to the health and well-being of inmates in its charge. To that end, the Government is directed to bring this order to the attention of the Warden at FCI Florence as soon as possible.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: February 3, 2023.